UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

TYLER CLARKE,

   Plaintiff,

v.

NORTHERN LIGHT HEALTH;

NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER; and

SECURITAS SECURITY SERVICES USA, INC.,

   Defendants.

 COMPLAINT

## I. PARTIES AND JURISDICTION

1. **Plaintiff Tyler Clarke is a resident of Maine. He was employed by Securitas and assigned to Northern Light Eastern Maine Medical Center ("NLEMMC") beginning October 21, 2024.**
2. **Defendant Securitas Security Services USA, Inc. ("Securitas") is a Delaware corporation. Defendant Northern Light Health ("NLH") is a Maine corporation.**
3. **Venue is proper in this Court. Plaintiff timely exhausted administrative remedies. The Maine Human Rights Commission ("MHRC") issued Notices of Right to Sue on January 6, 2026 (Ex. A). The EEOC issued Right to Sue notices on February 17, 2026.**

## II. FACTUAL ALLEGATIONS AND CHRONOLOGY

4. **Transfer and Assignment (Oct. 21, 2024). Plaintiff began his assignment at NLEMMC subject to Securitas payroll and NLH site control.**
5. **Medical Disclosure (Dec. 10, 2024). Plaintiff disclosed he is a survivor of sexual assault and suffers from PTSD. Clinical notes documented moderate-to-severe depressive symptoms and the need for accommodation (Ex. E).**
6. **The "Phantom" Disciplinary Record (Dec. 20, 2024). Securitas Supervisor William Smith drafted a disciplinary email but sent it only to himself, creating a fraudulent**

paper trail to justify later termination without providing guidance or warning (Ex. C).

7. Report of Sexualized Conduct (Dec. 26, 2024–Feb. 20, 2025). Plaintiff reported witnessing NLEMMC nursing staff displaying sexually explicit videos and engaging in explicit commentary. Supervisors failed to escalate these reports to HR or the Hotline.

8. The Retaliatory Pivot (Feb. 2025). Following reports, Defendants characterized Plaintiff's trauma-related distress as "untrustworthiness" and circulated medical disclosures without a need-to-know basis to disparage his character.

9. Removal from Schedule (Mar. 7, 2025). NLH Security Manager Tristan Shank directed Securitas to remove Plaintiff from the schedule (Ex. B). Securitas terminated Plaintiff that same day, citing pretextual "misconduct."

10. Unemployment Adjudication (Apr. 10, 2025). Maine DOL Decision No. 1995791 adjudicated that the facts did not establish misconduct and allowed benefits. Defendants did not appeal (Ex. D).

11. The Fabricated "Medical Leave" Pretext (Apr. 23, 2025). Securitas falsely claimed Plaintiff was on a "medical leave of absence" based on a doctor's note. PCHC confirmed no such medical note was ever authored or sent (Ex. I).

12. Post-Termination Harm (Summer 2025). Medical records document severe psychological injury caused by Defendants' conduct, requiring a formal Crisis Plan on July 10, 2025 (Ex. G).

13. Concealment of Evidence (Sept. 5, 2025). NLH referenced a "roster of employee complaints" in MHRC filings but never produced it, concealing a pattern of ignoring harassment (Ex. F).

14. Ongoing Conditioning (Winter 2025–2026). Plaintiff sustained a head injury at new employment. Due to prior trauma, he experienced a debilitating fear of discharge, stating "I am going to get fired over this" (Ex. G).

15. Interference with Current Benefits (Feb. 2026). Plaintiff's current employer, UCP of Maine, utilizes NLH for EAP benefits. NLH's email systems rejected Plaintiff's messages with "5.4.14 Hop count exceeded" errors, impeding access to benefits (Ex. H).

16. Persistent Technical Block (Mar. 16, 2026). Plaintiff attempted to contact NLH Counsel Megan Randlett regarding the ongoing dispute. The message was rejected by the NLH server with the same "5.4.14 Hop count exceeded" error, proving the block remains active (Ex. M).

17. Bad Faith Inquiry by Counsel (Mar. 16, 2026). NLH Counsel Megan Randlett sent an email claiming no block exists while simultaneously requesting sensitive information regarding Plaintiff's access methods and current employment benefits. This inquiry constitutes a bad faith attempt to conduct unauthorized discovery and further interferes with Plaintiff's post-employment rights.

**III. CAUSES OF ACTION (Against All Defendants, Jointly and Severally)**

**COUNT I — Hostile Work Environment (Sex) (Maine Human Rights Act)**

18. Plaintiff realleges paragraphs 1–17.

19. Defendants subjected Plaintiff to unwelcome conduct based on sex and/or sexual orientation that was severe and/or pervasive. This conduct included sexually explicit behavior by NLEMMC staff which Defendants tolerated and failed to remediate, altering the terms and conditions of employment, in violation of the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A).

**COUNT II — Retaliation (Maine Human Rights Act & Maine Whistleblowers' Protection Act)**

20. Plaintiff realleges paragraphs 1–21.

21. Plaintiff engaged in protected activity by reporting sexualized conduct in the ESA and by requesting a reasonable accommodation for his disability.

22. Defendants, acting individually and in concert, removed Plaintiff from the NLH schedule and terminated his employment because of that protected activity. The temporal proximity between Plaintiff's February 2025 reports and his March 7, 2025 removal supports causation. This conduct violates the MHRA, 5 M.R.S. § 4633, and the MWPA, 26 M.R.S. § 833.

**COUNT III — Disability Discrimination; Failure to Accommodate (ADA and Maine Law)**

23. Plaintiff realleges paragraphs 1–24.

24. Plaintiff is a qualified individual with a disability, including PTSD and major depressive disorder, able to perform the essential functions of his job with or without reasonable accommodation.

25. Defendants failed to engage in a good-faith interactive process and refused to reasonably accommodate Plaintiff (e.g., by removing him from the triggering ESA environment). Instead, Defendants used Plaintiff's medical disclosures to label him "unstable" and a "safety risk" and terminated him on pretext, in violation of the ADA, 42 U.S.C. § 12112, and Maine law.

**COUNT IV — Aiding and Abetting; Unlawful Interference (Maine Human Rights Act)**

26. Plaintiff realleges paragraphs 1–26.

27. NLH, through its Manager of Security, intentionally interfered with Plaintiff's employment contract and relationship with Securitas by demanding his removal without cause (Ex. B).

28. NLH and Securitas aided and abetted one another's unlawful conduct, coordinating to remove and terminate Plaintiff in order to silence his reports of sexualized conduct, in violation of 5 M.R.S. § 4633.

**COUNT V — Post-Employment Retaliation/Interference (Maine Human Rights Act)**

29. Plaintiff realleges paragraphs 1–30.

**30. After termination, Defendants engaged in retaliatory and interfering conduct likely to dissuade a reasonable person from protected activity, including domain‑level email rejections to legal/compliance/civil‑rights addresses and rejection of Securitas's Employee Relations inbox, impeding access to EAP benefits and protected channels, in violation of 5 M.R.S. § 4633.**

**COUNT VI — Intentional Infliction of Emotional Distress (Pled in the Alternative)**

**31. Plaintiff realleges paragraphs 1–30.**

**32. Defendants' conduct—including the conscious misuse of sensitive medical disclosures, the fabrication of medical leave documentation, gaslighting of Plaintiff's harassment reports, and post‑employment interference—was extreme and outrageous and caused Plaintiff severe emotional distress, warranting damages under Maine law.**

**IV. EFAA FORUM ELECTION AND JURY DEMAND**

**33. EFAA Election. Pursuant to the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (EFAA), 9 U.S.C. §§ 401–402, Plaintiff expressly elects a judicial forum for claims involving sexual harassment and related legal rights. Any predispute arbitration agreement is unenforceable as to these disputes.**

**34. Jury Demand. Plaintiff demands a trial by jury on all issues so triable.**

**V. PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, awarding:**

**A. Back Pay: All lost wages and benefits from the date of removal/termination (March 7, 2025) through judgment, including salary, overtime, shift differentials, bonuses, retirement/401(k) contributions, employer-paid insurance premiums, and other fringe benefits; amounts to be proven by payroll and tax records and expert valuation.**

**B. Front Pay: In lieu of reinstatement where reinstatement is impracticable, an award of front pay based on vocational expert analysis and present-value calculations.**

**C. Compensatory Damages: For emotional distress, mental anguish, medical and therapy expenses, loss of enjoyment of life, reputational injury, and other non-economic harms proven at trial.**

**D. Punitive Damages: To punish and deter reckless or willful disregard for Plaintiff's protected rights and to deter similar future conduct, including fabrication of disciplinary/medical records and interference with protected channels and benefits.**

**E. Reinstatement or Front Pay: Reinstatement to the same or a substantially equivalent position; or, in the alternative, front pay, job-search assistance, and retraining costs.**

**F. Injunctive Relief: Specific prospective measures including:**

  **(i) revision of NLH and Securitas harassment, privacy, and accommodation policies within 60 days;**

  **(ii) trauma-informed anti-harassment and ADA accommodation training for supervisors within 120 days;**

  **(iii) a confidential accommodation intake and escalation process;**

(iv) independent annual audits of vendor scheduling and credentialing for two years; and

(v) Court-ordered reporting to ensure compliance;

(vi) a narrowly tailored non-contact and non-retaliation injunction prohibiting Defendants and their officers, employees, agents, and attorneys from directly or indirectly contacting Plaintiff outside counsel-to-party communications, intimidating or retaliating against Plaintiff or witnesses, or interfering with Plaintiff's access to benefits or protected reporting channels;

(vii) an order compelling NLH to restore and maintain deliverability of Plaintiff's emails to legalservices@northernlight.org, compliance@northernlight.org, and the Civil Rights Director, and to certify remediation of any routing/policy rules causing "5.4.14 Hop count exceeded" or similar rejections, within 7 days, supported by a sworn IT declaration;

(viii) an order requiring Securitas to accept and process Plaintiff's personnel-file requests at EmployeeRelations@securitasinc.com or an alternative designated mailbox and to certify that no technical blocks ("5.4.1 Access denied" or similar) remain in effect, within 7 days, supported by a sworn IT declaration; and

(ix) if necessary, a temporary restraining order and preliminary injunction on these terms pending final judgment.

G. Attorneys' Fees and Costs: Reasonable attorneys' fees, expert fees, and costs pursuant to the MHRA and other applicable statutes.

H. Corrective Notice / Leadership Statement: In the Court's discretion, one of the following narrowly tailored remedies: (1) a court-approved corrective notice; (2) a written leadership statement by senior NLH management; or (3) upon evidentiary showing, a narrowly tailored private apology in Court-approved language.

I. Disciplinary Reporting: An order requiring Defendants to take appropriate disciplinary action consistent with law and internal policy against any employees found to have engaged in unlawful harassment/retaliation and to report (redacted) outcomes to the Court within 45 days of final determination.

**J. Independent Neutral Investigation:** Appointment of a court-approved independent investigator limited to: handling of harassment/safety reports; handling of disability disclosures and accommodation requests; the March 7, 2025 removal decision-making; and policy compliance; with safeguards including independence attestation, a 90-day report (one 30-day extension for good cause), in camera privilege procedures, initial funding by Defendants with reallocation authority, and protective order/anti-retaliation injunction for cooperating witnesses.

**K. Order to Produce Withheld Evidence:** Immediate production of the "roster of employee complaints" referenced in NLH's September 5, 2025 MHRC filing.

**L.** Any other relief the Court deems just and proper, including declaratory relief and post-judgment monitoring.

## VI. EXHIBIT INDEX

**Exhibit A: MHRC Notices of Right to Sue (Charges E25-0239-A and B).**

**Exhibit B: NLH March 7, 2025 "remove from schedule" email (Removal Directive).**

**Exhibit C: Securitas "Phantom" Email dated December 20, 2024 (sent to self).**

**Exhibit D: Maine DOL Deputy's Decision No. 1995791 (Finding No Misconduct).**

**Exhibit E: Clinical notes and PHQ-9 dated December 10, 2024 (Baseline).**

**Exhibit F: NLH Filing dated September 5, 2025 (referencing withheld roster).**

**Exhibit G: Longitudinal Medical Evidence (2021–2026): March 10, 2025 Initial Assessment; December 15, 2025 CT Scan (Head Injury); January 14, 2026 Therapy Note (Conditioned Fear Response).**

**Exhibit H: Evidence of Blocked Communications (Server Logs: "5.4.14 Hop Count Exceeded"; "5.4.1 Access denied"; and NLH counsel denial of blocking).**

**Exhibit I: PCHC Audit Letter (Confirming No Medical Note Existed in April 2025).**

## VII. VERIFICATION AND AFFIDAVIT

**STATE OF MAINE**

**COUNTY OF PENOBSCOT**

**I, TYLER CLARKE, being first duly sworn, depose and state:**

**1. Personal Knowledge: I am the Plaintiff in the above-captioned civil action. I am over the age of eighteen and competent to testify to the matters stated herein.**

**2. Review of Complaint: I have read the foregoing First Amended Complaint and know the contents thereof.**

**3. Truth of Allegations: The factual allegations contained in Section II (Factual Allegations) and the description of the Exhibits in Section VI are true and correct to the best of my personal knowledge, except as to those matters stated on information and belief (such as the internal motivations of the Defendants), and as to those matters, I believe them to be true based on the circumstantial evidence available to me.**

**4. Specific Verification of Digital Evidence: I specifically verify under penalty of perjury that:**

**a. I personally received the "5.4.14 Hop Count Exceeded" and "Access Denied" error messages when attempting to contact Northern Light Health and Securitas, as described in Paragraph 19 and shown in Exhibit H.**

**b. I personally viewed the metadata of the December 20, 2024 email from William Smith, which indicated it was sent only to himself.**

c. I personally confirmed with Penobscot Community Health Care (PCHC) that no medical note was authored or sent in April 2025, contrary to Securitas's representations.

Dated: 3/18/26

*Tyler Clarke*

**TYLER CLARKE**

**Plaintiff, Pro Se**

**33 Upper Dedham Rd**

**Holden, ME 04429**

**(207) 944-3037**

**(207) 403-3426**

**Email: tylerclarke789@yahoo.com**

[Attached PDF: Gmail - Personnel Records, Cease-Blacklisting Demand, and Litigation Hold (Securitas – NLH Assignment).pdf]